**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| FEDERAL RESERVE BANK OF ATLANTA, FEDERAL RESERVE BANK OF BOSTON, FEDERAL RESERVE BANK OF CHICAGO, FEDERAL RESERVE BANK OF CLEVELAND, FEDERAL RESERVE BANK OF DALLAS, FEDERAL RESERVE BANK OF KANSAS CITY, FEDERAL RESERVE BANK OF MINNEAPOLIS, FEDERAL RESERVE BANK OF NEW YORK, FEDERAL RESERVE BANK OF PHILADELPHIA, FEDERAL RESERVE BANK OF RICHMOND, FEDERAL RESERVE BANK OF SAN FRANCISCO, and FEDERAL RESERVE BANK OF ST. LOUIS, | CIVIL ACTION FILE  NO.: _____ |
| Plaintiffs, | |
| v. | |
| BOZEMAN FINANCIAL LLC, | |
| Defendant. | |

## COMPLAINT FOR DECLARATORY RELIEF

THE FEDERAL RESERVE BANK OF ATLANTA, FEDERAL RESERVE

BANK OF BOSTON, FEDERAL RESERVE BANK OF CHICAGO, FEDERAL

RESERVE BANK OF CLEVELAND, FEDERAL RESERVE BANK OF

DALLAS, FEDERAL RESERVE BANK OF KANSAS CITY, FEDERAL

RESERVE BANK OF MINNEAPOLIS, FEDERAL RESERVE BANK OF NEW

YORK, FEDERAL RESERVE BANK OF PHILADELPHIA, FEDERAL

RESERVE BANK OF RICHMOND, FEDERAL RESERVE BANK OF SAN

FRANCISCO, and FEDERAL RESERVE BANK OF ST. LOUIS (collectively,

the "Federal Reserve Banks"), plaintiffs in the above-captioned action, for their

Complaint for Declaratory Relief against defendant BOZEMAN FINANCIAL

LLC ("Bozeman Financial"), allege as follows:

## NATURE OF THE ACTION

1.      This is an action for declaratory judgment of non-infringement of U.S.

Patent No. 6,754,640 B2 ("the '640 Patent") and U.S. Patent No. 8,768,840 B2

("the '840 Patent").  True and correct copies of the '640 Patent and the '840 Patent

are attached hereto as Exhibits A and B, respectively.

## THE PARTIES

2.      The Federal Reserve Bank of Atlanta is a corporation chartered under

the laws of the United States pursuant to the Federal Reserve Act of 1913,

12 U.S.C. § 221 *et seq.*, with its principal place of business in Atlanta, Georgia.

3.      The Federal Reserve Bank of Boston is a corporation chartered under the laws of the United States pursuant to the Federal Reserve Act of 1913, 12 U.S.C. § 221 *et seq.,* with its principal place of business in Boston, Massachusetts.

4.      The Federal Reserve Bank of Chicago is a corporation chartered under the laws of the United States pursuant to the Federal Reserve Act of 1913, 12 U.S.C. § 221 *et seq.*, with its principal place of business in Chicago, Illinois.

5.      The Federal Reserve Bank of Cleveland is a corporation chartered under the laws of the United States pursuant to the Federal Reserve Act of 1913, 12 U.S.C. § 221 *et seq.*, with its principal place of business in Cleveland, Ohio.

6.      The Federal Reserve Bank of Dallas is a corporation chartered under the laws of the United States pursuant to the Federal Reserve Act of 1913, 12 U.S.C. § 221 *et seq.*, with its principal place of business in Dallas, Texas.

7.      The Federal Reserve Bank of Kansas City is a corporation chartered under the laws of the United States pursuant to the Federal Reserve Act of 1913, 12 U.S.C. § 221 *et seq.*, with its principal place of business in Kansas City, Missouri.

8.      The Federal Reserve Bank of Minneapolis is a corporation chartered under the laws of the United States pursuant to the Federal Reserve Act of 1913,

12 U.S.C. § 221 *et seq.*, with its principal place of business in Minneapolis, Minnesota.

  9. The Federal Reserve Bank of New York is a corporation chartered under the laws of the United States pursuant to the Federal Reserve Act of 1913, 12 U.S.C. § 221 *et seq.*, with its principal place of business in New York, New York.

  10. The Federal Reserve Bank of Philadelphia is a corporation chartered under the laws of the United States pursuant to the Federal Reserve Act of 1913, 12 U.S.C. § 221 *et seq.*, with its principal place of business in Philadelphia, Pennsylvania.

  11. The Federal Reserve Bank of Richmond is a corporation chartered under the laws of the United States pursuant to the Federal Reserve Act of 1913, 12 U.S.C. § 221 *et seq.*, with its principal place of business in Richmond, Virginia.

  12. The Federal Reserve Bank of San Francisco is a corporation chartered under the laws of the United States pursuant to the Federal Reserve Act of 1913, 12 U.S.C. § 221 *et seq.*, with its principal place of business in San Francisco, California.

13.     The Federal Reserve Bank of St. Louis is a corporation chartered under the laws of the United States pursuant to the Federal Reserve Act of 1913, 12 U.S.C. § 221 *et seq.*, with its principal place of business in St. Louis, Missouri.

14.     The Federal Reserve Banks are instrumentalities of the United States that, collectively, make up the operating arm of the Federal Reserve System, the central bank of the United States.  Through their employees, the Federal Reserve Banks carry out the nationwide, operational responsibilities of the nation's central bank and perform a myriad of important public functions designed to develop, implement and foster the monetary and fiscal policies of the United States.  These functions include providing and maintaining the national infrastructure supporting payments, including the Federal Reserve Banks' FedLine Access Solutions ("FedLine") and related computer system, Check 21 check processing system, the FedACH Service ("FedACH") and related computer system, the Fedwire Funds Service ("Fedwire") and related computer system, and the National Settlement Service ("NSS") and related computer system (collectively, the "Federal Reserve Bank Systems").  The Federal Reserve Bank Systems form the backbone of the nation's payment systems.  Each of the Federal Reserve Banks relies upon and uses the Federal Reserve Bank Systems to fulfill their statutory mandate to provide financial services, including check processing and funds transfers, to U.S.

depository institutions, the U.S. Government, and foreign central banks and international organizations.

15.     On information and belief, Defendant Bozeman Financial LLC ("Bozeman Financial") is a limited liability corporation organized and existing under the laws of the State of Florida, with its principal place of business located at 8022 Stimie Avenue North, Saint Petersburg, Florida 33710.  Bozeman Financial may be served with process by and through its registered agent, Sandra W. Bozeman, at 8022 Stimie Avenue North, Saint Petersburg, Florida 33710.

## JURISDICTION AND VENUE

16.     This action arises under the patent laws of the United States, Title 35 of the United States Code, § 1 *et seq.*, with a specific remedy sought under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.  An actual, substantial, and continuing justiciable controversy exists between the Federal Reserve Banks and Bozeman Financial that requires a declaration of rights by this Court.

17.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

18.     This Court has personal jurisdiction over Defendant Bozeman Financial under Georgia's long-arm statute, O.C.G.A. § 9-10-91, because Bozeman

Financial transacts business in the State of Georgia by virtue of its purposeful and repeated contacts with the Federal Reserve Bank of Atlanta in this district concerning the '640 Patent and the '840 Patent, and its purposeful and repeated acts in this district pertaining to the enforcement of the '640 Patent and the '840 Patent against the Federal Reserve Bank of Atlanta and the other Federal Reserve Banks arising out of their alleged infringing activity occurring in Georgia and elsewhere, and the alleged infringing activity of their subscribers, some of which reside in Georgia.

19.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

## THE CONTROVERSY

20.     Bozeman Financial claims to be the owner, by assignment, of the '640 Patent, entitled "Universal Positive Pay Match, Authentication, Authorization, Settlement and Clearing System," which issued on June 22, 2004.

21.     Bozeman Financial claims to be the owner, by assignment, of the '840 Patent, entitled "Universal Positive Pay Match, Authentication, Authorization, Settlement and Clearing System," which issued on July 1, 2014.

22.     The '640 Patent and the '840 Patent are related to one another. Specifically, the '840 Patent is a continuation of U.S. Patent Application No. 12/893,837, which is a division of U.S. Patent Application No. 10/871,006, which

is a continuation-in-part of the patent application that matured into the '640 Patent. The '640 Patent and the '840 Patent are hereinafter sometimes jointly referred to as the "Patents-in-Suit."

23.     Each of the Patents-in-Suit identifies William O. Bozeman ("Mr. Bozeman") as the sole inventor.

24.     On information and belief, Mr. Bozeman is a manager and principal of Bozeman Financial.

25.     In December 2015, Bozeman Financial, and specifically, its principal, Mr. Bozeman, contacted the Federal Reserve Bank of Atlanta by telephone.  Mr. Bozeman informed the Federal Reserve Bank of Atlanta that he believes several financial institutions are infringing the Patents-in-Suit, as well as patents owned by one or more of the Federal Reserve Banks.  Mr. Bozeman offered to approach these third parties on behalf of Bozeman Financial and the Federal Reserve Banks in an effort to extract licensing fees from these third parties for their alleged infringements.  The Federal Reserve Bank of Atlanta declined Mr. Bozeman's business proposal to monetize the Federal Reserve Banks' patents on their behalf. Mr. Bozeman then informed the Federal Reserve Bank of Atlanta that he believes the Federal Reserve Banks are infringing the Patents-in-Suit.  Mr. Bozeman spoke at length about his view of the scope of Bozeman Financial's patents on "universal

positive pay." The Federal Reserve Bank of Atlanta informed Mr. Bozeman that while it had not researched his patents, it was confident that the Federal Reserve Banks do not offer any "positive pay" services, and therefore, the Federal Reserve Banks were not infringing.

26.    On or about January 27, 2016, Mr. Bozeman and Bozeman Financial, along with their counsel, again contacted the Federal Reserve Bank of Atlanta by telephone concerning the Patents-in-Suit.  Bozeman Financial reiterated that it believes that the Federal Reserve Banks have been infringing and are continuing to infringe the Patents-in-Suit, and made clear that Bozeman Financial intends to extract fees from the Federal Reserve Banks for the Banks' alleged infringement of these patents.  The Federal Reserve Bank of Atlanta again informed Bozeman Financial, Mr. Bozeman, and their counsel that it does not believe the Federal Reserve Banks are infringing the '640 Patent or the '840 Patent, and requested that they provide a written explanation of the bases for their infringement claims.

27.    On or about April 21, 2016, Mr. Bozeman and Bozeman Financial, through their counsel, again reached out to the Federal Reserve Bank of Atlanta, this time by e-mail, to "see if there is any mutual ground for agreement that [Bozeman Financial's] IP deserves some commercially reasonable treatment from the Fed and its subscribers, and others in the digital debit and payment ecosystem."

In his email, Bozeman Financial's counsel confirmed that they had reviewed the "publicly available date [sic] surrounding the Federal Reserve's role in the verification of electronic payments in accordance with the IP owned by Mr. Bozeman."  Bozeman Financial's counsel attached an infringement claim chart for the '840 Patent.  This infringement claim chart presents an element-by-element comparison of independent claim 1 of the '840 Patent to the Federal Reserve Banks' electronic services, using as examples the Federal Reserve Banks' FedACH, Fedwire, and FedLine services.  Bozeman Financial's counsel also attached a compilation of publicly-available materials describing the Federal Reserve Banks' electronic services, including FedLine, Check 21, FedACH, Fedwire, and NSS.  A true and correct copy of the April 21, 2016 e-mail and attachments is attached hereto as Exhibit C.

28.    Since Bozeman Financial's April 21, 2016 e-mail, Bozeman Financial and the Federal Reserve Bank of Atlanta, on behalf of itself and the other Federal Reserve Banks, have had several additional communications in writing and over the telephone, and one in-person meeting at the Federal Reserve Bank of Atlanta's offices in this District, concerning the Federal Reserve Banks' alleged infringement of the Patents-in-Suit.  Bozeman Financial's claims of infringement have extended to the Federal Reserve Banks' subscribers, some of which reside in

Georgia.  The Federal Reserve Banks have informed Bozeman Financial and its counsel that they have not infringed and are not infringing the '640 Patent and the '840 Patent, and that a license to these patents is neither necessary nor warranted.

29.    As a result of Bozeman Financial's previous and continued assertions that the Federal Reserve Banks are infringing the Patents-in-Suit, and the Federal Reserve Banks' denial of the same, an actual and justiciable controversy exists between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment under 28 U.S.C. §§ 2201 and 2202 as to the alleged infringement of the Patents-in-Suit.

## FIRST CLAIM FOR RELIEF
### (Declaratory Judgment of Non-Infringement of the '640 Patent)

30.    The Federal Reserve Banks incorporate herein by reference Paragraphs 1 through 29 above.

31.    An actual and justiciable controversy has arisen and now exists between the parties with respect to the alleged infringement of the '640 Patent.

32.    The Federal Reserve Banks have not infringed, and are not infringing, any claim of the '640 Patent, either directly or indirectly, either literally or under the doctrine of equivalents.

33.    Independent claim 1 of the '640 Patent is generally directed to a "universal positive pay match, authentication, authorization, clearing and

settlement system." The claimed system comprises "at least one server computer having a processor, an area of main memory, a storage device, and a bus connecting the processor, main memory, and the storage device; a database stored on said storage device; a data communications device connected to said bus for connecting said at least one server computer to an Internet; and web-based computer program code stored in said storage device and executing in said main memory under direction of said processor, the computer program code including: first instruction means for permitting a payer who executes a check for payment to enter and store check register information relating to the executed check in said database, the check register information including a check number, a date issued, a payee, a routing number, and an account number; second instruction means for providing a web site on the Internet accessible to the payer who executed the check, a payee of the executed check, a payee bank, a drawee bank, and banking institutions intermediate the payee bank and the drawee bank; third instruction means for enabling the payer who executed the check, the payee of the executed check, the payee bank, the drawee bank, and banking institutions intermediate the payee bank and the drawee bank to access check register information of the executed check at every point along a check clearing process in order to determine correspondence between check register information stored in said database and the

executed check presented for payment; and fourth instruction means for enabling the payer who executed the check, the payee of the executed check, the payee bank, the drawee bank, and banking institutions intermediate the payee bank and the drawee bank to determine whether tampering or altering has occurred to the executed check at every point along a check clearing process; wherein said database stores check register information for payers who execute checks having accounted with a plurality of unrelated drawee banks."

34.     By way of example only and without limitation, the Federal Reserve Banks do not infringe Claim 1 of the '640 Patent (or any of its dependent claims) because, among other reasons, the Federal Reserve Bank Systems do not comprise "web-based computer program code" that includes a "third instruction means for enabling the payer who executed the check, the payee of the executed check, the payee bank, the drawee bank, and banking institutions intermediate the payee bank and the drawee bank to access check register information of the executed check at every point along a check clearing process in order to determine correspondence between check register information stored in said database and the executed check presented for payment," or a "fourth instruction means for enabling the payer who executed the check, the payee of the executed check, the payee bank, the drawee bank, and banking institutions intermediate the payee bank and the drawee bank to

determine whether tampering or altering has occurred to the executed check at every point along a check clearing process," as those phrases are properly construed in the context of the '640 Patent.  None of these systems enable every participant in the check clearing process to access stored check register information at every point along the check clearing process to determine correspondence between stored check register information and the executed check presented for payment.  Further, none of these systems enable every participant in the check clearing process to determine whether tampering or altering has occurred to the executed check at every point along a check clearing process.

35.    Independent claim 21 of the '640 Patent is generally directed to "[a] computerized method for a universal positive pay match, authentication, authorization, clearing and settlement system."   The claimed method comprises: "(a) providing a database; (b) storing check register information relating to a check executed by a payer for payment in said database, the check register information including a check number, a date issued, a payee, a routing number, an account number, and an amount; (c) providing a web site on the Internet accessible to the payer who executed the check, a payee of the executed check, a payee bank, a drawee bank, and banking institutions intermediate the payee bank and the drawee bank; (d) enabling the payer who executed the check, the payee of the executed

check, the payee bank, the drawee bank, and banking institutions intermediate the payee bank and the drawee bank to access the check register information of the executed check stored in said database via the web site at every point along a check clearing process in order to determine correspondence between the check register information stored in said database and the executed check presented for payment; and (e) enabling the payer who executed the check, the payee of the executed check, the payee bank, the drawee bank, and banking institutions intermediate the payee bank and the drawee bank to determine whether tampering or altering has occurred to the executed check at every point along a check clearing process."

36.     By way of example only and without limitation, the Federal Reserve Banks do not infringe Claim 21 of the '640 Patent (or any of its dependent claims) because, among other reasons, the Federal Reserve Bank Systems do not perform the steps of "enabling the payer who executed the check, the payee of the executed check, the payee bank, the drawee bank, and banking institutions intermediate the payee bank and the drawee bank to access the check register information of the executed check stored in said database via the web site at every point along a check clearing process in order to determine correspondence between the check register information stored in said database and the executed check presented for payment," or "enabling the payer who executed the check, the payee of the

executed check, the payee bank, the drawee bank, and banking institutions intermediate the payee bank and the drawee bank to determine whether tampering or altering has occurred to the executed check at every point along a check clearing process," as those phrases are properly construed in the context of the '640 Patent. None of these systems enable all of the check clearing process participants to access the stored check register information of the executed check via the web site at every point along a check clearing process in order to determine correspondence between the stored check register information and the executed check presented for payment.  Further, none of these systems enable all of the check clearing process participants to determine whether tampering or altering has occurred to the executed check at every point along a check clearing process.

37.    The Federal Reserve Banks are entitled to a judgment declaring that they have not infringed and that they are not infringing any claim of the '640 Patent, either directly or indirectly, either literally or under the doctrine of equivalents.

## SECOND CLAIM FOR RELIEF
### (Declaratory Judgment of Non-Infringement of the '840 Patent)

38.    The Federal Reserve Banks incorporate herein by reference Paragraphs 1 through 37 above.

39.     An actual and justiciable controversy has arisen and now exists between the parties with respect to the alleged infringement of the '840 Patent.

40.     The Federal Reserve Banks have not infringed, and are not infringing, any claim of the '840 Patent, either directly or indirectly, either literally or under the doctrine of equivalents.

41.     Independent claim 1 of the '840 Patent is generally directed to a "computer implemented method for detecting fraud in financial transactions during a payment clearing process."  The claimed method comprises "receiving through one of a payer bank and a third party, a first record of an electronic financial transaction from at least one of the following group: a payer, a point-of-sale terminal, an online account and a portable electronic device; storing in a database accessible by each party to said payment clearing process of said electronic financial transaction, said first record of said electronic financial transaction, said first record comprising more than one parameter; receiving at said database at least a second record of said electronic financial transaction from one or more of a payee bank and any other party to said payment clearing process as said transaction moves along said payment clearing process, wherein said second record comprises at least one parameter which is the same as said more than one parameter of said first record; each of said first and second records received at said database

-17-

comprise at least two of the same said more than one parameters; determining by a computer when there is a match between at least two of said parameters of said second record of said first financial transaction received at said database and the same parameters of said first record of said financial transaction stored in said database, and wherein any party to said payment clearing process is capable of verifying said parameters at each point along said financial transaction payment clearing process; sending a notification to said payee bank participant with authorization to process said electronic financial transaction when said parameters match; and sending a notification to said payee bank participant to not process said electronic financial transaction when said parameters do not match."

42.     By way of example only and without limitation, the Federal Reserve Banks do not infringe Claim 1 of the '840 Patent (or any of its dependent claims) because, among other reasons, the Federal Reserve Bank Systems do not comprise "a database accessible by each party to said payment clearing process of said electronic financial transaction," or the ability to enable  "any party to said payment clearing process … [to] verify[] said parameters at each point along said financial transaction payment clearing process," as those claims are properly construed in the context of the '840 Patent.  None of these systems comprise such a database that is accessible by each party to the payment clearing process.  Further,

none of these systems can enable any party to the payment clearing process to verify parameters at each point along the financial transaction payment clearing process.

43.     Claim 8 is generally directed to a "computer implemented method for detecting fraud in a check clearing process."  The method of claim 8 comprises "providing a computer having a database accessible by each participant to said check clearing process; receiving at said computer a first record of a check from a payer including check register information; storing in said database said first record of said check received by said payer, said first record comprising at least two of the following parameters: a check number, a date issued, a payee, a routing number, an account number, and an amount; providing a network interface to said database accessed by one or more participants in said check clearing process selected from the group comprising: a payee of said check, a payee bank, a payer bank, banking institutions intermediate said payee bank and said payer bank, a clearing bank, a Federal Reserve Bank, and a third party processor; enabling said one or more participants in said check clearing process to communicate separately with said database via said network interface as said check moves along said check clearing process; receiving from said at least one or more participants in said check clearing process a second record of said check, said second record comprising at

least two of the following parameters: a check number, a date issued, a payee, a routing number, an account number, and an amount, and wherein any participant in said check clearing process is capable of verifying said parameters at each point along said check clearing process; determining by said computer correspondence between said parameters of said first record and said parameters of said second record of said check; providing an electronic notification to said participant, wherein said notification includes results of said correspondence determination; wherein said notification informs said participant to process said financial transaction when said first and second records correspond; and wherein said notification informs said participant to not process said financial transaction when said first and second records do not correspond."

44.    By way of example only and without limitation, the Federal Reserve Banks do not infringe Claim 8 of the '840 Patent (or any of its dependent claims) because, among other reasons, the Federal Reserve Bank Systems do not perform the steps of "providing a computer having a database accessible by each participant to said check clearing process," or enabling "any participant in said check clearing process … [to] verify[] said parameters at each point along said check clearing process," as those phrases are properly construed in the context of the '840 Patent. None of these systems comprise such a database that is accessible by each party to

the payment clearing process.  Further, none of these systems can enable any party to the check clearing process to verify parameters at each point along the check clearing process.

45.    Claim 15 of the '840 Patent is generally directed to a "computer implemented method for detecting errors in processing financial transactions." The claimed method comprises "providing at least one computer having a processor, an area of main memory, and a storage device having a database, wherein said database is accessible by each participant involved in said processing of financial transactions; storing in said database records of financial transactions relating to payments, comprising at least a first record of a first financial transaction received from at least one participant to said processing of said financial transaction selected from the following group: a payer, a point of sale terminal, an online account, and a portable electronic device, each financial transaction record including more than one parameter; receiving at said computer a second record of said first financial transaction from a bank of first deposit as said first financial transaction moves through said error detection process, said second record including at least some of said more than one parameters that are in said first record of said first financial transaction; determining by said computer whether there is a match between at least one of said parameters of said second

record of said first financial transaction received at said computer and one of the

same parameters in said first record of said first financial transaction stored in said

database, and wherein any participant in said processing of said financial

transaction is capable of verifying said parameters at each point along said error

detection process; providing a notification to said bank of first deposit with results

from said matching of said parameters of said second record with said parameters

of said first record; and providing a notification to said payer with results from said

matching."

46.     By way of example only and without limitation, the Federal Reserve

Banks do not infringe Claim 15 of the '840 Patent (or any of its dependent claims)

because, among other reasons, the Federal Reserve Bank Systems do not perform

the steps of "providing … a database, wherein said database is accessible by each

participant involved in said processing of financial transactions," or enabling "any

participant in said processing of said financial transaction … [to] verify[] said

parameters at each point along said error detection process," as those terms are

properly construed in the context of the '840 Patent.  None of these systems

comprise such a database that is accessible by each participant involved in the

processing of financial transactions.  Further, none of these systems can enable any

participant in the processing of a financial transaction to verify parameters at each point along the error detection process.

47.    The Federal Reserve Banks are entitled to a judgment declaring that they have not infringed and that they are not infringing any claim of the '840 Patent, either directly or indirectly, either literally or under the doctrine of equivalents.

## **PRAYER FOR RELIEF**

WHEREFORE, the Federal Reserve Banks pray for relief as follows:

A.    For a judicial declaration that the Federal Reserve Banks have not infringed and are not infringing, either directly or indirectly, either literally or under the doctrine of equivalents, any claim of U.S. Patent No. 6,754,640 and U.S. Patent No. 8,768,840;

B.    For an order awarding the Federal Reserve Banks their costs, expenses, and reasonable attorneys' fees as provided by law; and

C.    For such other and further relief as the Court deems just and proper.

Respectfully submitted, this 1st day of February, 2017.

KING & SPALDING LLP


s/ Natasha H. Moffitt

Natasha H. Moffitt
   Ga. Bar. No. 367,468
Benjamin K. Jordan
   Ga. Bar. No. 283,371
1180 Peachtree Street, NE
Atlanta, Georgia 30309
Tel.: (404) 572-4600
Fax: (404) 572-5134
Email: nmoffitt@kslaw.com
Email: kjordan@kslaw.com

Attorneys for Plaintiffs
FEDERAL RESERVE BANK OF
ATLANTA, FEDERAL RESERVE BANK
OF BOSTON, FEDERAL RESERVE
BANK OF CHICAGO, FEDERAL
RESERVE BANK OF CLEVELAND,
FEDERAL RESERVE BANK OF
DALLAS, FEDERAL RESERVE BANK
OF KANSAS CITY, FEDERAL RESERVE
BANK OF MINNEAPOLIS, FEDERAL
RESERVE BANK OF NEW YORK,
FEDERAL RESERVE BANK OF
PHILADELPHIA, FEDERAL RESERVE
BANK OF RICHMOND, FEDERAL
RESERVE BANK OF SAN FRANCISCO,
FEDERAL RESERVE BANK OF
ST. LOUIS